

CLERK'S OFFICE
A TRUE COPY
May 13, 2021
s/ Jeremy Heacox
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Records and information associated with the cellular telephone<br>assigned call number (414) 420-5297 that is stored at<br>premises controlled by Onvoy, LLC d/b/a Inteliquent | )<br>)<br>)<br>)<br>)<br>)    Case No.   21-M-381 (SCD) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A

located in the        District of                  , there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2119(1) and 2 | carjacking |
| 18 U.S.C. § 924(c); 18 U.S.C. | possessing and/or brandishing a firearm during a crime of violence; and |
| §§ 922(g)(1) and 924(a)(2) | felon in possession of a firearm |

The application is based on these facts:

see attached affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of     days *(give exact ending date if more than 30 days:*       *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Heather Wright, FBI SA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
       telephone             *(specify reliable electronic means).*

Date:    5-12-21

*Judge's signature*

City and state:   Milwaukee, WI          Stephen C. Dries, U.S. Magistrate Judge
                                       *Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Heather Wright, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number **(414) 420-5297** (the "**Target Cell Phone**"), that is stored at premises controlled by Onvoy, LLC d/b/a Inteliquent (Onvoy), a wireless telephone service provider headquartered at 550 West Adams Street, Chicago, Illinois 60661. Onvoy will be referred to as the "Service Provider." The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July of 2010. Since August of 2020, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of

Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities.

3.      Based on my training and experience, I know that criminal investigations have been aided by subpoenas, warrants, and court orders related to electronic communication records by providing critical investigative leads and corroborative evidence.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement personnel, and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 2119(1) (carjacking), Title 18, United States Code, Section 924(c) (possessing and/or brandishing a firearm during a crime of violence), and Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (felon in possession of a firearm) have been committed by Devon D. MOORE (MOORE) (DOB: XX/XX/1992). There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

2

## PROBABLE CAUSE

### Carjacking

6.      On November 7, 2020, at approximately 4:52 a.m., Milwaukee Police Department (MPD) officers responded to the area of 2532 N. Vel R. Phillips Avenue, Milwaukee, Wisconsin, to investigate a reported robbery. The victim of the robbery, Victim 1, provided an account of what happened to officers. According to Victim 1, on November 7, 2020, at approximately 2:00 a.m. or 2:30 a.m., Victim 1 and her friends, Latrese Patterson (LP) and S. Perkins (SP), went to a house party in the neighborhood of N. 23rd Street and Keefe Avenue in Milwaukee, Wisconsin. The three individuals took Victim 1's vehicle to the party. After approximately fifteen minutes at the party, Victim 1 left the party and returned to her home, leaving LP and SP at the party. Victim 1 remained in contact via text message with LP and SP while they were at the party. When LP and SP were ready to go home, Victim 1 drove twenty minutes back to the party to provide SP and LP a ride home. LP and SP were sisters and they lived at the same location.

7.      When Victim 1 arrived back at the party, an unknown black male, approximately 5'7", thin build, with a light complexion, got into her front passenger seat. Victim 1 reported that the male had hair that was braided in square designs, and he had a tattoo on his right forearm. He was wearing a white T-shirt and dark pants. According to Victim 1, Victim 1 and the male began talking and he explained that he knew LP and he had previously seen Victim 1 at the party. Victim 1 and the male discussed how they were both Geminis and he showed her his ID to confirm.

3

Victim 1 recalled that she observed the first name was "Devon" and believed his date of birth had been May 22, 1982.

8.     According to Victim 1, LP and SP then got into the back seat of the vehicle. LP told Victim 1 that "Devon" was her cousin. LP spoke highly of "Devon" and told Victim 1 that he was a good guy. "Devon" denied being LP's cousin.

9.     Victim 1 drove to LP's house. LP and SP got out of the vehicle; however, "Devon" did not get out. Victim 1 believed that "Devon" wanted to go home with Victim 1. Victim 1 told "Devon" that he could not come to Victim 1's house, but she would drive him where he needed to go. Victim 1 reported that "Devon" stated that he wanted to go to N. 3rd Street and W. Wright Street, and "Devon" instructed her where to drive and turn. "Devon" instructed Victim 1 to stop in an alley near 2620 N. Martin Luther King Drive. "Devon" asked for a goodbye hug, and Victim 1 got out of the vehicle as "Devon" came around to the driver's door. Victim 1 stated she thought they were going to hug. However, "Devon" began to grab the purse that was around Victim 1's shoulder. Victim 1 was confused and pulled back on the purse. "Devon" then began punching Victim 1 in the head and stated "Do you think I'm playing?" Victim 1 then reported that "Devon" produced a silver on top of black large handgun, pointed it to the ground, and fired one shot.

10.     After "Devon" shot the firearm, Victim 1 gave her purse to "Devon." "Devon" took her purse, got into the driver's seat of her vehicle, and told her to "start walking" as he drove slowly next to her. Victim 1 thought "Devon" may let her back in the car, but then he told her to start running as he increased the speed of

4

the vehicle. As they exited the alley and onto the street, Victim 1 observed a van driving by, ran away from her vehicle, and hid behind a concrete wall. Victim 1 then ran to a gas station located near N. 4th Street and W. Center Street and called 9-1-1.

11.     When officers arrived on scene, they observed swelling to Victim 1's left cheek and a small amount of dried blood on her left ear.

12.     On November 7, 2020, at 7:39 a.m., Victim 1's vehicle was reported to be abandoned in the alley near 215 W. North Avenue. At approximately 8:10 a.m., MPD officers were dispatched to the area. There, officers located Victim 1's stolen 2019 Toyota Camry, which had significant damage to the front end and a broken rear windshield. Victim 1's phone and purse were not recovered inside the vehicle.

13.     Later that same day, at approximately 8:28 a.m., MPD officers were dispatched to the area near 2600 block of N. 2nd Street, in the west alley. Upon arrival, officers located Victim 1, who stated that she had been driving near the area of the incident after leaving the police station and located her glasses and a casing in the alley near 2720 N. Dr. Martin Luther King Drive. The 9mm casing was placed on MPD inventory.

### Identification and Arrest of Devon MOORE

14.     On November 8, 2020, at approximately 3:30 p.m., Victim 1 contacted law enforcement, stating that she had located "Devon" on Facebook through searching LP's Facebook account. Victim1 stated that the account located was under the name "DAVON MOORE." Victim 1 described "Devon's" profile picture as a light complected black male wearing a black shirt, with two cornrow style braids

5

to the back. In reviewing "Devon's" page, Victim 1 located photos of guns, including one photo that contained a gun that Victim 1 believed looked similar to the gun that was used during the robbery. Victim 1 stated that the date of birth listed on the Facebook page was May 22, 1991. Victim 1 stated that the Facebook page of LP that Victim 1 used to locate "Devon" contained a profile picture of a black female wearing a light blue shirt, large hoop earrings, with braided hair.

15.     Victim 1 also stated that she believed that it was possible that LP had "set her up" since LP knew "Devon" well and he entered her vehicle at the party even though she had never met him prior.

16.     Victim 1's vehicle, a 2019 Toyota Camry, was processed for latent fingerprints by a Latent Print Examiner. The Latent Fingerprint Examiner compared Lift #1, recovered from the exterior driver's door gloss black door trim, with Devon D. MOORE (DOB: XX/XX/1992). The Lift recovered was identified as the left index finger of MOORE.

17.     On November 7, 2020, the 9 mm casing found at the scene of the carjacking was viewed and entered into the Integrated Ballistics Identification System (IBIS). On December 31, 2020, the casing revealed a connection to a Smith & Wesson, 9mm pistol, recovered on December 15, 2020, during a traffic stop.

18.     On December 22, 2020, at 4:18 p.m., MOORE was located at 3046 N. 38th Street in the City of Milwaukee. The subject was observed exiting the address and was subsequently taken into custody.

19.     On December 22, 2020, at 8:30 p.m., a photo array was presented to Victim 1 by an MPD detective. The array was conducted with six booking photos, with one photo placed in one of six folders, in a random order, leaving folders 7 and 8 intentionally blank. The detective shuffled the folders before presenting them. Victim 1 viewed the photo array and positively identified Devon D. MOORE as the individual that carjacked her and fired a pistol into the ground near her.

**Devon MOORE's Facebook Account**

20.     On March 2, 2021, I located MOORE's Facebook page under the profile name "DEVON MOORE," Facebook Account ID # 100028589742482. I observed five photos within the profile containing multiple firearms. The five photos were all posted on October 29, 2020, and all have a caption at the top of each photo. When viewed together, the captions on the photographs read: "Do We Have A Problem."

21.     Photo 1, depicted below, shows the right hand of a person holding up a black handgun with a scope attached to the top of the gun with the caption "Do."



22.     Photo 2, depicted below, shows a male with a tattoo on his right arm and another on the outside of this right hand, holding a black with wood assault rifle with an extendo. The caption "We" appears above the image, over the individual's face. The male is wearing a black T-shirt and black jeans. The male has a tattoo on his right forearm with a star. I reviewed the Facebook photos associated with MOORE, some of which depicted MOORE's face. I was able to match the tattoo in Photo 2 to the tattoo worn by MOORE in those photos depicting his face. Victim 1 also described "Devon" as having a tattoo on his right forearm.



Case 2:21-mj-00381-SCD   Filed 05/13/21   Page 9 of 22   Document 1

23.     Photo 3, depicted below, shows a light complected black male holding two silver handguns with the barrels pointing at the camera. The male is wearing a silver chain and the photo contains the caption "Have" over the individual's face. The male is wearing a white, ribbed, tank top, has black hair, and has at least a small amount of black facial hair on his chin.



24.     Photo 4, depicted below, shows two silver handguns. One of the handguns is a silver over black/gray Smith & Wesson and is stamped with the manufacturing location of Smithfield, MA. This gun is consistent with Victim 1's description of the gun used in the carjacking. The second, smaller of the two

handguns, is stamped with "KEL TEE" and has an extended magazine. The photo contains the caption "A."



25.     Photo 5, depicted below, shows four guns laying on what appears to be a vehicle rear seat. Two of the guns are handguns. One of the handguns is silver over black in color (possibly the same gun as in Photo 4) and the second is black with a light mounted underneath the barrel (possibly the same gun as in Photo 1). The third gun appears to be a Mac or a Tech, black in color, with an extended magazine. The fourth gun appears to be a shotgun, black in color. The photo contains the caption "Problem."



26.     MOORE has been convicted of two counts of felon in possession of a firearm. *See State of Wisconsin v. Moore*, Milwaukee County Case Number 2011CF77. Accordingly, he is prohibited from possessing firearms.

27.     On March 2, 2021, law enforcement sent a preservation letter to Facebook requesting the preservation of records for Facebook Account ID # 100028589742482, MOORE's Facebook account.

28.     On March 30, 2021, United States Magistrate Judge Nancy Joseph issued a search warrant authorizing the search of MOORE's Facebook account. On April 30, 2021, I retrieved and reviewed the provided information from Facebook regarding MOORE's account. Upon review, I located numerous messages and posts issued by MOORE regarding the purchase and selling of firearms, the purchase and

11

selling of drugs, discussions regarding the planning of robberies, photographs of firearms, and messages regarding MOORE's cellular telephone number.

29.     On October 31, 2020, MOORE posted a status at approximately 9:12 p.m.[1], stating: "**(414) 420-5297** [**Target Cell Phone**] feel free to call and tell me I'm wrong cuz if I hear it from the next I'm gone show how wrong I can get nbs !!!!FAMILY (emoji)."

30.     On November 3, 2020, at approximately 1:00 a.m., MOORE sent a Facebook message to Facebook Account User ID 100024151575000, which message stated: "Man I got good gas around." Seconds later, MOORE sent another message to this same user, which stated: "**(414) 420-5297**," or **Target Cell Phone**.

31.     Based upon MOORE's Facebook messages, I believe that MOORE provided the **Target Cell Phone** as a phone number where he could be contacted. I thus believe that MOORE operated and/or controlled the **Target Cell Phone** during and around the time frame of the November 7, 2020, carjacking. I further believe that obtaining historical location data for the **Target Cell Phone** for the days surrounding the day of the crime could lead to information about MOORE's whereabouts during the relevant time period.

<u>Cell-Site Data</u>

32.     In my training and experience, I have learned that the Service Provider is a company that provides cellular telephone access to the general public.

---

[1] All times obtained from the Facebook search warrant are in UTC time.

12

I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

33. Based on my training and experience, I know Service Providers can collect cell-site data about the **Target Cell Phone**. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

34. Based on my training and experience, I know that some providers also collect per-call measurement data, which data estimates the approximate distance of the cellular device from a cellular tower based on the speed with which signals

13

travel between the device and the tower.  This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

35.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service.  I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business.  In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the **Target Cell Phone's** user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

36.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

37.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on the

Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## ATTACHMENT A

### Property to Be Searched

Records and information associated with the cellular telephone assigned call number **(414) 420-5297** (referred to in attachment B as the "the Account"), that is stored at premises controlled by Onvoy, LLC d/b/a Inteliquent (Onvoy) (the "Service Provider"), headquartered at 550 West Adams Street, Chicago, Illinois 60661.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

     To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the following dates: November 6, 2020, November 7, 2020, and November 8, 2020:

    A.    The following information about the customers or subscribers of the Account:

        1.    Names (including subscriber names, user names, and screen names);

        2.    Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        3.    Local and long distance telephone connection records;

        4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        5.    Length of service (including start date) and types of service utilized;

        6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

Identity Identifiers ("IMSI"), or International Mobile Equipment
Identities ("IMEI");

7.    Other subscriber numbers or identities (including the
      registration Internet Protocol ("IP") address); and

8.    Means and source of payment for such service (including any
      credit card or bank account number) and billing records.

B.    All records and other information (not including the contents of
      communications) relating to wire and electronic communications sent
      or received by the Account, including:

1.    the date and time of the communication, the method of the
      communication, and the source and destination of the
      communication (such as the source and destination telephone
      numbers (call detail records), email addresses, and IP
      addresses); and

2.    information regarding the cell tower and antenna face (also
      known as "sectors") through which the communications were
      sent and received, as well as per-call measurement data.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of
violations of Title 18, United States Code, Section 2119(1) (carjacking), Title 18,
United States Code, Section 924(c) (possessing and/or brandishing a firearm during
a crime of violence), and Title 18, United States Code, Sections 922(g)(1) and
924(a)(2) (felon in possession of a firearm) involving Devon MOORE during the
period November 6 – 8, 2020.

Law enforcement personnel (who may include, in addition to law enforcement
officers and agents, attorneys for the government, attorney support staff, agency
personnel assisting the government in this investigation, and outside technical

2

experts under government control) are authorized to review the records produced by the Service Provider to locate the things particularly described in this Warrant.

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Onvoy, LLC d/b/a Inteliquent (Onvoy LLC), and my title is

_____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Onvoy LLC. The attached records consist of

_____ . I further state that:

      a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Onvoy LLC, and they were made by Onvoy LLC as a regular practice; and

      b.     such records were generated by Onvoy LLC's electronic process or system that produces an accurate result, to wit:

          1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Onvoy LLC's in a manner to ensure that they are true duplicates of the original records; and

2.       the process or system is regularly verified by Onvoy, LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____     _____
Date                                  Signature